UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 95-088-2 (PLF) |
| ) | |
| PERCY BARRON, ) | |
| Defendant ) | |

## OPINION AND ORDER

Pending before this Court is defendant Percy Barron's Emergency Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) and Memorandum in Support Thereof ("Def. Mot.") [Dkt. No. 593]. Mr. Barron contends that his medical conditions, "place[] him at serious risk of becoming severely ill from COVID-19" and justify a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Def. Mot. at 1. The government opposes the motion, contending that Mr. Barron's health conditions do not merit such relief, that Mr. Barron's vaccination for COVID-19 makes him unlikely to become seriously ill from the virus, and that the sentencing factors weigh against his release. United States' Opposition to Defendant's Motion for Compassionate Release ("Gov't Opp.") [Dkt. No. 599] at 20, 28. For the following reasons, the Court will deny Mr. Barron's motion for compassionate release.[1]

---

[1] The Court has reviewed the following documents in connection with the pending motion: Indictment ("Indictment") [Dkt. No. 1]; Judgment and Commitment ("Judgment") [Dkt. No. 274]; Motion Request for this Court to Immediately Release Defendant from the Penitentiary or Court Order for the Federal Bureau of Prisons to Immediately Transfer Defendant to the U.S. Medical Center for Federal Prisoners in Lexington, Kentucky Due to the Coronavirus Crisis at USP McCreary ("Def. Pro Se Mot.") [Dkt. No. 540]; Government's Opposition to Defendant's Pro Se Motion to be Released from Detention ("Govt. Opp. Pro Se Mot.") [Dkt. No. 542]; Defendant Percy Barron Response to the Government Opposition to Defendant Pro Se Motion to

## I. BACKGROUND

On July 30, 1996, Mr. Barron was found guilty by a jury on thirty-four counts, stemming from a series of serious offenses perpetrated by Mr. Barron and two co-defendants between July 3, 1993, and September 20, 1993. Judgment at 1-3; Indictment; Gov't Opp. at 24. Mr. Barron's conduct included firearms offenses, armed robbery, assault, and first-degree felony murder, and involved numerous federal and D.C. Code violations. Judgment at 1-2. On March 4, 1997, Judge Gladys Kessler sentenced Mr. Barron to 409 years and 4 months to life. Judgment at 3; Def. Mot. at 2. On appeal, the D.C. Circuit reversed Mr. Barron's conviction on three of the counts relating to a shooting that Mr. Barron allegedly was involved in at Sun Ray Market because the 911 tapes from the incident were inadvertently provided to the jury during deliberation. See United States v. Cunningham, 145 F.3d 1385, 1394-98 (D.C. Cir. 1998). The court found that "[a]lthough the jury arguably could have found Barron guilty even absent the error, the remaining evidence implicating Barron for the Sun Ray shootings is not so overwhelming as to compel us to conclude that the error did not affect the jury's verdict." Id. at 1397. On November 13, 1998, Judge Kessler resentenced Mr. Barron to a term of 273 years and 8 months to life, with a minimum sentence of 130 years. Gov't Opp. at 4.

---

be Released from Detention ("Def. Pro Se Resp.") [Dkt. No. 544]; counsel's Supplement to Mr. Barron's Reply in Support of Compassionate Release ("Def. First Suppl. Reply") [Dkt. No. 545]; Defendant Percy Barron Supplemental Brief ("Def. Pro Se Suppl. Br.") [Dkt. No. 546]; counsel's Emergency Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) and Memorandum in Support Thereof ("Def. Mot.") [Dkt. No. 593]; United States' Opposition to Defendant's Motion for Compassionate Release ("Gov't Opp.") [Dkt. No. 599]; Government's Filing of Sealed Exhibits ("Gov't Ex.") [Dkt. No. 600]; counsel's Reply in Support of Emergency Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) ("Def. Reply") [Dkt. No. 605]; and counsel's Supplemental Reply in Support of Emergency Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) ("Def. Suppl. Reply") [Dkt. No. 619].

On April 27, 2020, Mr. Barron filed a pro se motion for immediate release from detention due to his risk of COVID-19 at the U.S. Penitentiary McCreary ("USP McCreary"), in which Mr. Barron requested that he either be immediately released or transferred to a medical facility. Def. Pro Se Mot. at 5. On July 22, 2020, this Court denied Mr. Barron's pro se motion without prejudice, concluding that Mr. Barron had not exhausted his administrative remedies and that the Court had no authority to order a transfer of Mr. Barron to a different facility. See United States v. Barron, Crim. No. 95-0088, 2020 WL 4219818 (D.D.C. July 22, 2020), at *1. The Court also stated that "while Mr. Barron has already served a lengthy term of twenty-six years imprisonment, his original sentence was substantially longer, at 210 years imprisonment." Id. at *2. On August 5, 2020, in response to a request from Mr. Barron, the Court issued a second memorandum opinion and order recommending – though not directing – that the Bureau of Prisons ("BOP") transfer Mr. Barron to the United States Medical Center for Federal Prisoners in Springfield, Missouri ("Springfield MCFP"). See Memorandum Opinion and Order [Dkt. No. 551]; see also United States v. Barron, Crim. No. 95-0088, 2021 WL 39604, at *1 (D.D.C. Jan. 5, 2021) (denying Mr. Barron's request for "a binding order from the Court that he be transferred to Springfield MCFP"). So far as the Court is aware, the BOP has not moved Mr. Barron in response to this recommendation.

On June 30, 2021, Mr. Barron filed a second motion for compassionate release "based on the 'extraordinary and compelling reasons' presented by his vulnerability to COVID-19." See Def. Mot. at 1. In its opposition, the government argued that Mr. Barron's concerns surrounding his health and aging do not establish extraordinary and compelling reasons for a sentence reduction, and that Mr. Barron's offenses and his criminal history weigh against early release. Gov't Opp. at 1. Mr. Barron filed an initial reply in support of his motion on

3

November 6, 2021, see Def. Reply, and a supplemental reply on June 3, 2022, which included an affidavit from his uncle providing details regarding his willingness to house and support Mr. Barron upon his release. See Def. Suppl. Reply. Mr. Barron is now fifty-three-years-old and has served over twenty-eight years in prison. See Def. Mot. at 2; Gov. Opp. at 7; Gov't Ex. 1; Bureau of Prisons, https://www.bop.gov/inmateloc/.

## II. LEGAL STANDARD

"Federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed . . . but the rule of finality is subject to a few narrow exceptions." Freeman v. United States, 564 U.S. 522, 526 (2011) (internal quotation marks and citation omitted). One such exception is codified at 18 U.S.C. § 3582(c)(1)(A). As modified by the First Step Act in 2018, Section 3582(c)(1)(A) allows courts to modify a sentence upon a motion by a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request." 18 U.S.C. § 3582(c)(1)(A).

Once a defendant satisfies this exhaustion requirement, they must show that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). In evaluating extraordinary and compelling circumstances, courts historically have looked to a policy statement promulgated by the U.S. Sentencing Commission. See U.S. SENT'G GUIDELINES MANUAL ("U.S.S.G.") § 1B1.13 cmt. n.1(A) (U.S. SENT'G COMM'N 2018); United States v. Clark, Crim. No. 10-133, 2021 WL 5630795, at *2 (D.D.C. Dec. 1, 2021); United States v. Speaks, Crim. No. 18-0111-1, 2021 WL 3128871, at *3 (D.D.C. July 23, 2021); United States v. Hicks, Crim. No. 93-97-2, 2021 WL 1634692, at *3 (D.D.C. Apr. 27, 2021). The Sentencing Commission issued this policy statement in 2018 before enactment of the First Step

4

Act. Because the Sentencing Commission "has lacked a quorum since early 2019, . . . it has been unable to update its preexisting policy statement concerning compassionate release to reflect the First Step Act's changes." United States v. Long, 997 F.3d 342, 348 (D.C. Cir. 2021). Specifically, the policy statement refers only to motions brought by the BOP and does not account for the fact that defendants may now bring compassionate release motions on their own behalf. See id. at 349.

The D.C. Circuit therefore has held that the policy statement "is not 'applicable' to defendant-filed motions for compassionate release under the First Step Act." United States v. Long, 997 F.3d at 355. In the wake of Long, district courts must "assess whether [a defendant] has demonstrated 'extraordinary and compelling reasons' warranting a sentence reduction under 18 U.S.C. § 3592(c)(1)(A), without treating U.S.S.G. § 1B1.13 as binding." United States v. Johnson, 858 F. App'x 381, 384 (D.C. Cir. 2021) (per curiam). Even as the policy statement is not binding, however, it still may provide guidance as to the extraordinary and compelling nature of a defendant's circumstances. See United States v. Aruda, 993 F.3d 797, 802 (9th Cir. 2021); United States v. Thompson, 984 F.3d 431, 433 (5th Cir. 2021); United States v. Gunn, 980 F.3d 1178, 1180 (7th Cir. 2020).

According to the policy statement, "extraordinary and compelling reasons" exist where the defendant is "suffering from a serious physical or mental condition" or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I), (III). Health conditions that limit one's ability to practice self-care in a detention facility include those that "compromise a defendant's ability . . . to provide for his own activities of daily living, such as eating and

drinking, toileting, washing and dressing, and mobilization." United States v. Morris, Crim. No. 12-154, 2020 WL 2735651, at *7 (D.D.C. May 24, 2020). The policy statement also acknowledges that there may be "[o]ther [r]easons" presenting "an extraordinary and compelling reason other than, or in combination with, the reasons described" elsewhere in the commentary. Id. at *3 (quoting U.S. Sent'g Guidelines Manual § 1B1.13 cmt. n.1(D)). To that end, "[t]he COVID-19 pandemic presents such an 'other reason,' given the circumstances in [the defendant's] case." Id.

The compassionate release statute further instructs courts to consider the sentencing factors set out in 18 U.S.C. § 3553(a) "to the extent that they are applicable" in evaluating whether to reduce a sentence. 18 U.S.C. § 3582(c)(1)(A). These factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; . . .

18 U.S.C. § 3553(a)(1)-(2).[2] A court's consideration of the sentencing factors "requires a discretionary balancing," United States v. Long, 997 F.3d at 360, "with an eye toward whether it

---

[2] Section 3582(c)(1)(A) also directs courts to evaluate whether a sentence reduction is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A); see also Concepcion v. United States, No. 20-1650, 2022 WL 2295029, at *9 (U.S. June 27, 2022). As noted above, the existing policy statement is no longer applicable to defendant-filed motions. United States v. Long, 997 F.3d at 355. The requirement of the policy statement that release be denied if a defendant remains "a danger to the safety of any other person or to the community," id. at 348 (quoting U.S.S.C. § 1B1.13(2)), no longer presents a "categorical bar" to release, id. at 360. Nevertheless, "even without the policy statement, courts

is necessary to maintain the prior term of imprisonment despite the extraordinary and compelling reasons to modify the defendant's sentence," United States v. Johnson, 464 F. Supp. 3d 22, 30 (D.D.C. 2020).

### III. DISCUSSION

#### A. Exhaustion of Administrative Remedies

Mr. Barron has satisfied the exhaustion requirement for compassionate release. He filed a request to the warden at USP McCreary for compassionate release on August 19, 2020. Def. Mot. at Ex. 1. This request was denied on September 9, 2020, noting that Mr. Barron's concern about COVID-19 exposure did not warrant early release. Def. Mot. at 2; id. at Ex. 2. The government does not dispute that Mr. Barron has exhausted his administrative remedies. See Gov't Opp. at 14; United States v. Johnson, 464 F. Supp. 3d at 28.

#### B. Extraordinary and Compelling Reasons

Mr. Barron argues that his medical conditions present "extraordinary and compelling" reasons for release because he suffers from "hypertension, high cholesterol, diabetes, chronic kidney disease and cornea transplant[,] . . . [which] has led to pre glaucoma and requires constant ophthalmology consults and graftings." Def. Mot. at 5-6; id. at Ex. 3; see also Def. Suppl. Reply at 3. Mr. Barron and the government agree that the CDC has designated obesity, chronic kidney disease, diabetes, and hypertension as risk factors for severe illness from COVID-19. Def. Mot. at 5; Gov't Opp. at 18-19. The government nevertheless disputes that Mr. Barron's kidney disease, which has remained in remission since 2016, along with his hypertension and cornea transplant increase his risk of severe illness from COVID-19. Gov't

---

will still consider the anticipated effect of compassionate release on crime and public safety" in weighing the sentencing factors set out in 18 U.S.C. § 3553(a). Id. at 356.

7

Opp. at 19. The government further argues that defendant's high cholesterol and obesity "are relatively common, and all of his conditions appear to be well-treated in the prison environment." Id. at 19-20.

Although Mr. Barron's increased risk from diabetes and obesity are uncontested, the Court is not persuaded that Mr. Barron has demonstrated "extraordinary and compelling reasons [that] warrant [his requested] reduction." 18 U.S.C. § 3582(c)(1)(A). To start, the Court does not find that incarceration at USP McCreary makes Mr. Barron more likely to contract serious illness from COVID-19. Mr. Barron received two doses of the Pfizer-BioNTech vaccine as of March 3, 2021. Def. Mot. at 5; Gov't Opp. at 20. In light of Mr. Barron's vaccination status, his medical conditions are not "extraordinary [n]or compelling." See United States v. Morales, Crim. No. 06-248-4, 2021 WL 4622461, at *7 (D.D.C. Oct. 7, 2021) (finding that the defendant's "substantial protection against COVID—and especially against life-threatening courses of the disease—seriously undermine[d] [his] purported 'extraordinary and compelling reason' for release"); see also United States v. Long, Crim. No. 99-0182, 2021 WL 3185600, at *4 (D.D.C. July 28, 2021) (finding that despite the Delta variant, as well as defendant's chronic kidney disease, hypertension, high cholesterol, and prediabetes, "the vaccine that [he] [] received provides robust protection against the very risk of illness that defense counsel described in her motion").

Furthermore, there are zero known COVID-19 cases at USP McCreary at this time. See Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited July 1, 2022). Although the facility continues to operate under its most restrictive procedures, see Bureau of Prisons, USP McCreary, https://www.bop.gov/locations/institutions/mcr/ (last visited March 31, 2022), Mr. Barron's health is not in imminent danger from the present conditions

inside the facility. See United States v. Fields, Crim. No. 19-048, 2021 WL 780738, at *4 (D.D.C. Mar. 1, 2021) ("In light of the dramatic decline in the number of inmates testing positive for COVID-19 . . .[defendant's] circumstances lack the extraordinary and compelling character required."); United States v. Sumler, Crim. No. 95-154-2, 2021 WL 6134594, at *25 (D.D.C. Dec. 28, 2021), appeal filed, No. 22-3005 (D.C. Cir. Jan. 22, 2022) ("[W]idespread availability of vaccinations, including within BOP facilities, and the low infection rates . . . outweigh any heightened risk of COVID-19 complications."); United States v. Riddick, Crim. No. 95-073-1, 2022 WL 138074, at *3-4 (E.D. Pa. Jan. 14, 2022) (conditions at USP McCreary did not place the defendant with heart conditions, hypertension, and autoimmune disorder in imminent danger from COVID-19). In sum, Mr. Barron's health circumstances do not rise to the level of extraordinary and compelling reasons that warrant release.

*C. Sentencing Factors*

The Court further concludes that reducing Mr. Barron's sentence at this time would be inconsistent with the applicable sentencing factors under 18 U.S.C. § 3553(a). To start, the Court finds that the "nature and circumstances of the offense" weigh against a sentence reduction. 18 U.S.C. § 3553(a)(1). Mr. Barron is incarcerated for extremely serious criminal activity including nine counts of robbery while armed, six counts of assault with intent to murder while armed, three counts of second-degree burglary while armed, and two counts of first-degree felony murder while armed. Judgment at 1-2; Gov't Opp. at 3-4. At sentencing, Judge Kessler stated on the record that while "it is true that Mr. Barron has no prior history of violent crimes[,] [] this was not just a one night or a one week terrible crime spree. This [was] a terrible crime spree that occurred over a summer." Transcript of Sentencing Before the Honorable Gladys Kessler ("Sentencing Tr.") [Dkt. No. 292] at 24. Judge Kessler emphasized that "Mr. Barron

9

never made any attempt to pull out, to disassociate himself, to say that he had had enough after the first horrible events occurred." Id.

The severity of these offenses weighs strongly against reducing Mr. Barron's period of incarceration at this time. See United States v. Long, Crim. No. 10-171-1, 2021 WL 3792949, at *2 (D.D.C. Aug. 26, 2021) (convictions of RICO conspiracy that included kidnapping and murder weighed against relief); United States v. Wilson, Crim. No. 96-319-1, 2021 WL 5292457, at *5 (D.D.C. Aug. 6, 2021) (early release for a conviction for murder "minimize[d] the nature and seriousness of the offense" and weighed against compassionate release). While Mr. Barron attempts to minimize the severity of his criminal activity and argues that other defendants with similar criminal records have been released, he does not cite a single case from this district that involves first-degree murder, and no case that rises to the level of the "terrible crime spree" described by Judge Kessler. Sentencing Tr. at 24; see Def. Mot. at 7-8 (citing United States v. Barber, Crim. No. 14-239 (D.D.C. June 16, 2020) [Dkt. No. 57] (unlawful possession of a firearm); United States v. Curtis, Crim. No. 03-533, 2020 WL 1935543 (D.D.C. Apr. 22, 2020) (sex trafficking); United States v. Hammond, Crim. No. 02-294, 2020 WL 1891980 (D.D.C. Apr. 16, 2020) (armed robbery)).

Furthermore, the Court concludes that Mr. Barron's "history and characteristics" and his conduct while incarcerated do not provide support for early release. See 18 U.S.C. § 3553(a)(1). To the contrary, Mr. Barron's disciplinary record at BOP is over thirty pages long, and demonstrates that he has committed a number of serious disciplinary offenses while incarcerated, with the most recent infraction occurring as recently as 2020. Gov't Opp. at 30-31; Gov't Ex. 4. And while Mr. Barron has arranged housing upon release, has strong family support, and plans to seek employment, Def. Suppl. Reply at 2, his disciplinary history weighs

heavily against early release. See United States v. Oliver, Crim. No. 00-157-21, 2021 WL 2913627, at *6 (D.D.C. July 12, 2021) (defendant's disciplinary record of fifteen infractions over ten years weighed against compassionate release); see also United States v. Edwards, Crim. No. 03-234, 2021 WL 3128870, at *4 (D.D.C. July 22, 2021) (noting that although the defendant "made plans for seeking housing and employment post-release, this does not outweigh the extent of his criminal history and disciplinary record" (internal citation omitted)).

Lastly, the sentence Judge Kessler imposed is necessary "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). Mr. Barron has served approximately 28 years of what is effectively a life sentence that requires a minimum of 130 years of incarceration. Gov't Opp. at 4. To reduce Mr. Barron's sentence this soon would "minimize the nature and seriousness of the offense." United States v. Wilson, Crim. No. 96-319-01, 2021 WL 5292457, at *5 (D.D.C. Aug. 6, 2021), recons. denied, 2021 WL 5292460 (D.D.C. Sept. 28, 2021) (quotations omitted). Furthermore, granting early release to Mr. Barron now would lead to disparate sentences between Mr. Barron and similar defendants. See Gov't Opp. at 32 (noting that "the minimum sentence for one first degree murder conviction under the D.C. Code is thirty years"); see also United States v. Wilson, 2021 WL 5292457 (denying compassionate release to a defendant convicted of first-degree murder); United States v. Robinson, Crim. No. 04-128, 2021 WL 1318027, at *12 (D.D.C. Apr. 8, 2021) (denying compassionate release to a defendant convicted of two first-degree felony murders despite "remarkable strides" during incarceration).

In sum, the goals of sentencing would not be served by reducing Mr. Barron's sentence. While the undersigned did not preside over the trial in this case, the Court has carefully considered Judge Kessler's comments at sentencing and her assessment of Mr.

Barron's conduct and his role in the offense, the Sentencing Guidelines, and the Section 3553(a) factors. Mr. Barron has now served twenty-eight years, representing approximately ten percent of his full term. In the Court's view, requiring him to serve a substantial portion of the remainder of his sentence remains appropriate and necessary "to promote respect for the law, [] to provide just punishment for the offense[, ] to afford adequate deterrence to criminal conduct[, and] to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(A)-(C). Mr. Barron has not presented extraordinary or compelling circumstances as required by Section 3582(c)(1)(A), and the Section 3553(a) factors weigh against release.

For the foregoing reasons, it is hereby

ORDERED that Mr. Barron's [Dkt. No. 593] Emergency Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) is DENIED.

SO ORDERED

_____
PAUL L. FRIEDMAN
United States District Judge

DATE: 7/1/22